Filed 8/22/23  P. v. Butler CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. KENNETH WAYNE BUTLER, Defendant and Appellant. | B320049 (Los Angeles County Super. Ct. No. BA302062) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Tarlyle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Kenneth Wayne Butler was convicted following a jury trial in 2007 of first degree felony murder and attempted robbery with a robbery-murder special-circumstance finding.  After a federal court granted Butler's petition for writ of habeas corpus and set aside the convictions based on ineffective assistance of counsel, Butler pleaded guilty to voluntary manslaughter.

In 2019 Butler petitioned for resentencing pursuant to Penal Code section 1172.6 (former section 1170.95).[1]  The superior court denied the petition after an evidentiary hearing, finding beyond a reasonable doubt that Butler had been a major participant in the attempted robbery of Marvin Williams, which led to Williams's murder, and had acted with reckless indifference to human life during the offense, as now required to find an individual guilty of felony murder under section 189, subdivision (e)(3).  On appeal Butler contends the finding that he had acted with reckless indifference to human life was not supported by substantial evidence.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Butler's Conviction for Special-circumstance Murder*

According to the evidence at Butler's 2007 trial, Butler and Earl Harris III worked together dealing drugs from the Huntington Hotel in downtown Los Angeles.  Linda McDowell, Williams's live-in girlfriend, testified that Harris and Butler approached her sometime in January 2006 and, while standing on either side of her, demanded she tell Williams to stop selling drugs at the hotel.  The two men told McDowell that they knew Williams had guns and warned, "We have them too."   In the week or two preceding this threat McDowell had seen several

---

[1]     Statutory references are to this code.

arguments between Harris and Williams at which Butler was also present.  According to McDowell, with each argument Williams's emotional response escalated.

Williams continued to deal drugs out of the hotel despite Harris and Butler's threat.  About a week later Butler and Harris decided to rob Williams in an effort to force him from the hotel. They recruited Charles Ray, an acquaintance, to assist them; and the three men met on January 28, 2006 to discuss the robbery. Ray testified Harris explained the plan while Butler stood by quietly.  Harris and Butler then each loaded a gun.[2]

Harris instructed Ray to purchase drugs from Williams to confirm he was in his room on the third floor.  Ray went up to Williams's room and stood in the hallway just outside the room as Williams sold him the drugs.  Williams remained inside the room. After the exchange Williams leaned forward to peer down the hallway.  As he was leaving Ray heard Williams through the closed door tell someone that Ray had never bought drugs from him before and that it felt "weird."  Ray returned to Harris and Butler in their room on the second floor and informed Harris that "homeboy is spooked."

Four hours after the planning meeting Harris announced it was time to proceed.  Harris approached Williams's room from one end of the hall; Butler and Ray from the other.  The three men wore sweatshirts with hoods pulled over their heads and gloves to avoid leaving fingerprints.  Ray did not see whether

---

[2]    Ray, testifying at trial under a grant of immunity, explained he had agreed to help with the robbery because he wanted crack cocaine and was afraid his relationship with Harris, from whom he purchased drugs, would be over if he did not agree to the plan.

Harris or Butler took his firearm with him as the men left for Williams's room.

At Harris's direction Ray placed tape over the peephole in the door across the hall from Williams's apartment because the drug dealer who lived there was their "enemy," and they did not want him "coming out of the door shooting." Harris and Butler waited at Williams's door, which had no peephole.

Immediately before Ray knocked on Williams's door according to the plan, Harris told Ray (for the first time) they were not going to rob Williams, but just talk to him. Ray then knocked on the door with Butler and Harris standing on either side of him. Williams opened the door slightly; Ray stepped back; Harris pushed the door open all the way. Ray heard three gunshots—one louder than the other two.

Ray testified Williams shot first, firing as soon as the door opened. As Harris fell to the ground, he shot twice at Williams. Ray helped Harris up, and the two men ran down the hall where they found Butler. The three men continued downstairs and returned to Harris and Butler's room. Once there, Harris and Butler took out their guns and placed them on a white towel. They then all fled from the hotel.

According to McDowell, Williams kept a loaded revolver and an automatic handgun in his hotel room for protection. When someone knocked on Williams's door, McDowell would usually answer while Williams stood to the side with a loaded gun. However, when Ray knocked on Williams's door before the shooting, Williams instructed McDowell to stay in bed, grabbed his automatic handgun and opened the door himself.

McDowell testified that she heard three gunshots and saw Williams fall backward. She did not know who fired first.

Williams died in the hours after the shooting from two gunshot wounds.

Butler was convicted of first degree felony murder, attempted robbery and conspiracy to commit robbery.  The jury also found true the robbery-murder special-circumstance allegation.  The court sentenced Butler to life without parole for the special-circumstance murder and stayed the sentences for the other offenses.  We affirmed Butler's convictions on appeal. (*People v. Butler* (Aug. 19, 2008, B199608) [nonpub. opn.].)

    2. *Habeas Relief and Butler's Plea to Voluntary Manslaughter*

In 2014 the United States District Court granted Butler's petition for a writ of habeas corpus, overturning Butler's convictions because his trial counsel had failed to adequately investigate Butler's alibi defense.  (*Butler v. McEwen* (C.D.Cal., Feb. 20, 2014, No. CV-11-03543-DDP (RNB) [2014 U.S.Dist. Lexis 75687].)  In lieu of being retried, Butler pleaded no contest in 2015 to voluntary manslaughter and admitted he had personally used a firearm and the offense was committed for the benefit of a criminal street gang.  He was sentenced to an aggregate state prison term of 20 years.

    3. *Butler's Petition for Resentencing*

On January 7, 2019 Butler, representing himself, filed a petition for resentencing pursuant to former section 1170.95 and requested the court appoint counsel to represent him during the proceedings.   Following briefing by the People and Butler's appointed counsel, the superior court found Butler had made a prima facie showing of entitlement to relief, issued an order to show cause and set the matter for an evidentiary hearing.

Butler, who was out of custody on parole, attended the April 1, 2022 evidentiary hearing. The court stated it had already reviewed the trial transcripts. Neither party presented any new evidence. In addition to the points made in his prehearing brief, Butler's counsel argued that Ray's accomplice testimony was not adequately corroborated (an issue we had rejected on Butler's direct appeal) and was insufficient to prove Butler had been a major participant in the attempted robbery and had acted with reckless indifference to human life, as now required for Butler to be guilty under the felony-murder rule. The court indicated it would review the trial transcripts again, paying particular attention to the arguments made in the parties' briefs and at oral argument, and took the matter under submission.

On April 6, 2022 the superior court issued a 17-page order denying Butler's petition. The court concluded Ray's testimony was adequately corroborated by other evidence in the record and found, after analyzing the evidence in light of the factors identified in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the People had proved beyond a reasonable doubt that Butler was a major participant in the attempted robbery of Williams and had acted with reckless disregard for human life during the offense.

Butler filed a timely notice of appeal.

## DISCUSSION

1. *Accomplice Liability for Murder and Section 1172.6*

Under the ameliorative changes to the law relating to accomplice liability for murder effected by Senate Bill No. 1437 (Stats. 2018, ch. 1015), malice must be proved to convict a principal of murder except under the narrowed felony-murder

6

rule set forth in section 189, subdivision (e), and may not be imputed based solely on an individual's participation in a crime (§ 188, subd. (a)(3)), thereby eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843; see *People v. Reyes* (2023) 14 Cal.5th 981, 984).  The amended felony-murder provision requires the People to prove specific facts relating to the defendant's individual culpability:  The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "'as described in subdivision (d) of [Penal Code] Section 190.2,'" the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).  (See *People v. Strong* (2022) 13 Cal.5th 698, 708.)

Section 1172.6 authorizes an individual convicted of felony murder or murder based on the natural and probable consequences doctrine or any other theory under which malice is imputed based solely on that person's participation in a crime to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of these changes to the law relating to accomplice liability for murder.  As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), effective January 1, 2022, Senate Bill No. 1437's ameliorative changes to the law of murder and section 1172.6's provisions for

resentencing relief now expressly apply to individuals convicted of attempted murder and voluntary manslaughter.[3]

If, as here, the petitioner makes the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder or voluntary manslaughter conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subd. (d)(1).)

At the evidentiary hearing to determine whether the petitioner is entitled to relief, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)  The court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony.  The petitioner and the prosecutor may also offer new or additional evidence.  (*Ibid.*)  The superior court's decision to deny the petition after an evidentiary hearing, if the court correctly understood the elements of the offense and the proper standard and burden of proof were applied, is reviewed for substantial evidence.  (*People v. Reyes*, *supra*, 14 Cal.5th at p. 988; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951; *People v.*

---

[3]     An individual convicted of voluntary manslaughter was not eligible for resentencing under former section 1170.95 when Butler filed his petition in January 2019.  However, by the time the superior court issued its order to show cause in April 2022, Senate Bill No. 775's expansion of the scope of potential relief under section 1172.6 had become effective.

*Ramirez* (2021) 71 Cal.App.5th 970, 985; *People v. Hernandez* (2021) 60 Cal.App.5th 94, 113.)

    2.  The Banks/Clark *Factors*

As discussed, section 189, subdivision (e), limits the scope of the felony-murder rule to an individual participating in an enumerated underlying felony who was the actual killer, who with the intent to kill assisted the actual killer in the commission of first degree murder, or who "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." "Penal Code section 190.2, subdivision (d), enacted by initiative in 1990, provides that 'every person, not the actual killer, who, with reckless indifference to human life and as a major participant' aids or abets an enumerated felony, including attempted robbery, that results in death may be convicted of special circumstance murder and sentenced to death or to life imprisonment without the possibility of parole. The statute, by its text, imposes an actus reus requirement, major participation in the enumerated felony, and a mens rea requirement, reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 674 (*Scoggins*); accord, *Clark*, *supra*, 63 Cal.4th at p. 615; *Banks*, *supra*, 61 Cal.4th at p. 798.)

The Supreme Court in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, and more recently in *Scoggins*, *supra*, 9 Cal.5th 667, identified the factors courts must consider in assessing whether a defendant was a major participant in an underlying serious felony and acted with reckless indifference to human life for purposes of section 190.2, subdivision (d), and thus for section 189, subdivision (e)(3). (See generally *People v. Strong*, *supra*, 13 Cal.5th at pp. 705, 707.) To determine whether

a defendant was a major participant in one of the specified felonies, the *Banks* Court listed the following factors: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of the particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, at p. 803, fn. omitted.)

As to whether a defendant acted with reckless indifference to human life, the Supreme Court enumerated the following factors: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins*, *supra*, 9 Cal.5th at p. 677; accord, *Banks*, *supra*, 61 Cal.4th at p. 808.) "'"[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient."'" (*Scoggins*, at p. 677.)

As the *Scoggins* Court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Scoggins*, *supra*,

9 Cal.5th at p. 676; accord, *Banks*, *supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a 'grave risk of death'"].) "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.'" (*Scoggins*, at pp. 676-677, quoting *Clark*, *supra*, 63 Cal.4th at p. 617.)

### 3. *Substantial Evidence Supports the Superior Court's Denial of Butler's Petition*

Ample evidence supported the superior court's finding that Butler was a major participant in the attempted robbery of Williams—a finding not directly challenged by Butler on appeal. Butler and Harris were partners engaged in selling drugs from the Huntington Hotel (although Harris was described as the "brains" of the business); and the men wanted Williams, a drug-dealing competitor, to leave the hotel. To that end, Butler, along with Harris, threatened McDowell in the weeks before the shooting. When the threat proved ineffectual, the men decided to rob Williams, not for financial gain, but to drive him out of the hotel. Butler attended the meeting at which Harris explained the plan to their accomplice Ray; and in preparation Butler and Harris both loaded their guns, which they brought with them to Williams's door as Ray knocked again to initiate the robbery.

To be sure, as Butler argues, Ray testified he did not see Butler carrying a gun as the men left Harris and Butler's room to commit the robbery and did not notice whether Butler was holding a gun as Williams opened the door. But Ray also testified he saw Butler load a gun in preparation for the robbery

11

and place his gun on a towel upon returning to the hotel room after the shooting. It was certainly reasonable for the court as factfinder to infer that Butler brought the gun with him to the robbery scene as an active participant in the crime.

The evidence also fully supported the superior court's finding that Butler acted with reckless indifference to human life. Butler contends the plan was just to rob Williams to get Williams to vacate the hotel and insists he did not know there was any likelihood Harris would kill Williams. Yet, far from making an effort to minimize the risk of violence, Butler knew that he and Harris were each carrying loaded firearms; that Williams was also armed; and that he and Harris had threatened Williams (through McDowell), making explicit reference to all parties being armed. In addition, Butler was fully aware after Ray returned to the room from his initial purchase of drugs on January 28, 2006 that Williams was "spooked," necessarily increasing the likelihood of violence when Williams was confronted during the planned robbery. Moreover, as the superior court observed, the men's conduct showed they knew they had to be extremely careful during this robbery, as evidenced by their wearing of hooded sweatshirts and gloves and Ray's placement of tape over the peephole of the drug dealer living across from Williams to prevent him from "coming out of the door shooting."

Butler emphasizes that the confrontation between Williams and Harris was brief and the evidence indicated he was standing at the end of the hallway when Harris shot Williams, could not have seen the exchange of gunfire and had "no knowledge of Williams's condition." (See *People v. Ramirez, supra*, 71 Cal.App.5th at p. 989 [although present at the scene, defendant was less culpable because he was not close enough to

exercise a restraining effect on his colleagues].)  While perhaps true, Butler certainly heard the gunshots, knowing that Harris was carrying a firearm, yet did not inquire about Williams, let alone call the 911 emergency number, instead fleeing from the scene with Harris and Ray.  Taken together, the evidence justified the conclusion that Butler engaged in the attempted robbery knowing it "'carr[ied] a grave risk of death'" (*Scoggins*, *supra*, 9 Cal.5th at p. 677; *Banks*, *supra*, 61 Cal.4th at p. 811) and was willing to assist in killing Williams to achieve his and Harris's goal of forcing Williams to leave the hotel, even if Williams's death was not specifically desired as the outcome of the robbery.  (See *Clark*, *supra*, 63 Cal.4th at p. 617.)

In an alternative argument, albeit one devoid of reasoning, Butler contends, because his murder conviction was vacated following the granting of his petition for writ of habeas corpus and he thereafter pleaded guilty to voluntary manslaughter, the superior court could not now find him guilty of murder.  Butler appears to misunderstand the significance of the superior court's findings.  Butler's conviction for voluntary manslaughter remains in place.  The court's findings that the evidence established beyond a reasonable doubt that he was guilty of felony murder under amended section 189, subdivision (e)(3)—a finding expressly authorized by section 1172.6, subdivision (d)(1) and (3)—means only that he is not entitled resentencing relief, nothing more.

## DISPOSITION

The postjudgment order denying Butler's petition for resentencing is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.